(36 Misc. Rep. 385.)

### SANDER ·v. SAVAGE.

(Supreme Court, Trial Term, Kings County. November, 1901.)

COMMITTEE OF INCOMPETENT—TROVER.

　　Where an incompetent person, who has not been judicially declared such, executes a chattel mortgage to secure a loan, and on default in interest the mortgagee takes the chattel, a subsequently appointed committee cannot repudiate the mortgage, and maintain trover in the cepit for the taking.

Action by Alfred E. Sander against Henry B. Savage. Action dismissed, and plaintiff moves for a new trial. Denied.

Alfred E. Sander, in pro. per.
Fitzgerald & Stokes, for defendant.

MAREAN, J. This action was dismissed on the plaintiff's opening to the jury, and plaintiff now moves for a new trial. The action is trover. The plaintiff is the committee of Victoria Berger, an incompetent person. The complaint alleges that Victoria Berger was on a day named the owner and in possession of certain chattels, and that defendant on that day wrongfully took the same from

her possession and converted them to his own use. It then alleges the adjudication on a subsequent day of her incompetency, and the appointment of the plaintiff to be her committee, and demands judgment for a sum of money as damages. In his opening to the jury, plaintiff's counsel stated that, on a day prior to the alleged taking, Victoria Berger borrowed a sum of money from the defendant, and, to secure the same and interest, gave him her bond and a mortgage upon the chattels in question; that default was made in the payment of the interest, and that defendant, as it was provided he might do in the mortgage, took the property from the mortgagor and converted it to his own use; and that such taking and conversion was the taking and conversion complained of. He further stated that, at the time the loan was obtained and the bond and mortgage given, Victoria Berger was insane, and that defendant had notice of it. Thereupon the complaint was dismissed.

The question presented is whether the taking in pursuance of the authority granted by the mortgage was a wrongful conversion, upon which the committee can maintain trover. The plaintiff's theory is that the mortgage was a pure nullity, and that therefore the taking has the same tortious character for all purposes as though there had never been a mortgage. In that I think he is mistaken. There is a class of transactions which are a nullity. Neither party has a right to elect whether he will affirm or repudiate. Such are contracts against public policy or good morals, or expressly forbidden by statute. There is another class where one of the parties has an election whether he will affirm or repudiate, but the other has no such election. He cannot repudiate. As to him, they are valid, unless and until the first party repudiate them; and his acts done in pursuance of the convention, whatever it may be, while it remains uncertain whether it is to be affirmed or repudiated, and while his own hands are tied by the terms of such convention, cannot be regarded as tortious ex post facto upon a subsequent repudiation. Whatever judges may have carelessly said, as distinguished from what they have actually decided, there is no exception to the proposition that contracts and deeds of insane persons belong to the class last mentioned. They may be either affirmed or repudiated in a proper case by the insane person upon recovery, or by his committee when appointed, or by his heir or executor in case of his death; and in the meantime the other party must stand by it. When this plaintiff was appointed committee and had repudiated the mortgage (no particular act was necessary, so that it unequivocally evidenced his election), he could probably have recovered the chattels from the defendant, if defendant still had them, or could have demanded them and brought trover in the detinet if defendant refused to give them up, or, if defendant had sold them, could have recovered the proceeds, and generally could have maintained any suitable action based upon his title consistent with the nontortious character of defendant's acts authorized by the mortgage with reference to the property up to the time of the election; but he cannot maintain trover in the cepit, based upon the original taking pursuant to the terms of the mortgage. I am not aware of any case in which

a contrary doctrine is asserted, and this is all I find it necessary to decide. The discussion by the learned counsel for plaintiff covers an altogether different field. Regarding that discussion, I will say in passing that, as I apprehend, the real distinction, formerly of more importance, between void and voidable transactions, both of which belong to the class in which there is a right of election, lies in this: that the former are upon election recognized as void in a court of law, while the latter are only so recognized in a court of equity, by which they must first be decreed void before their voidness is available either for offense or defense in a court of law. Much of the learning on that subject is, of course, now obsolete in this state. One thing more: The reasons given by judges for their conclusions are no part of what is actually decided. It is nonsense, in the light of modern science, to say that an insane person has no mind, and that therefore his acts are void. This notion is a relic of the old belief that an insane person was possessed of the devil; that another mind had driven his own out of his body, and occupied its place and dictated his actions. An insane mind receives erroneous impressions from without, called "hallucinations." Its processes of thought and reason are distorted, and its conclusions are therefore delusions; and those mental processes are further disturbed by abnormal excitement. But he does no act which is not the creature of an impulse from his own brain. His mind is sick, but it is still his mind. If the acts of an insane person were a nullity because he has no mind, then all his acts would be alike a nullity, without regard to any other circumstance. But it is settled that the acts of insane persons are not a nullity, but may or may not be avoided, according to the circumstances, and depending upon equitable considerations. There is no hard and fast rule which makes them either void or voidable. Insurance Co. v. Hunt, 79 N. Y. 541. All that was decided in Van Deusen v. Sweet, 51 N. Y. 378, as distinguished from what was said, was that under the circumstances of that case, which afforded no equitable grounds for denying a right of election, the right of election existed, and was sufficiently exercised by the plaintiff, and that such title as defendant had was thereupon defeated; that the deed needed not to be first declared void in a court of equity, but the matter in avoidance was recognizable in a court of law; and that, the deed having been avoided by the plaintiff, he was entitled to recover on his title as heir at law. It was plainly intimated in Aldrich v. Bailey, 132 N. Y. 85, 30 N. E. 264, that the Van Deusen Case was deemed of doubtful authority for the radical propositions laid down in the opinion, and which were not necessary to the disposition of the case. Motion for new trial denied, with $10 costs.

Motion denied, with $10 costs.